SELDEN ·N. MERRIAM, PLAINTIFF IN ERROR, V. THE COUNTY OF OTOE, ETC., DEFENDANT IN ERROR.

1. **Taxes:** VOID SALE: LIABILITY OF COUNTY. Under the provisions of section 71 of the revenue law (Gen. Stat., 924), it is only when by such mistakes or wrongful acts of the treasurer or other officer as are not matter of record nor which are participated in by the purchaser, land has been sold contrary to the provisions of said act, that the county is to save the purchaser harmless.

2. ————: TITLE OF PURCHASER: STATUTE OF LIMITATIONS. The title acquired by a purchaser at tax sale might be said to fail when it should be pronounced invalid by the judgment or decree of a court of competent jurisdiction over the subject matter. *Peet v. O'Brien*, 5 Neb., 360. And when such title has failed by reason of the land having been sold contrary to the provisions of the revenue law, "by mistake or wrongful act of the treasurer or other officer," it is then that the statute of limitations commences to run against the purchaser and in favor of the county.

ERROR to the district court for Otoe county. Heard below before POUND, J.

*Covell & Ransom*, for plaintiff in error, cited: *Scott v. Tyler*, 14 Baird, 202. *Aberdeen v. Blackmar*, 6 Hill, 324. *Campbell v. Jones*, 4 Wend., 306.

*Watson & Wodehouse*, for defendant in error.

COBB, CH. J.

Plaintiff brought his action in the court below under the provisions of section 71 of the old revenue law (Gen. Stat., 924). His petition contains two causes of action, in each of which he alleges the purchase by him from the county treasurer of Otoe county in his official capacity on the 4th day of January, 1878, of different and specified tracts of land situate in said county for delinquent taxes of 1876, and the payment to him of the taxes on said tracts of land for the several years therein specified; that said lands were in each case wrongfully sold to said plaintiff for the non-payment of the taxes aforesaid, and were sold contrary to the provisions of the revenue law of this state then in force, because a part of the said taxes for which said lands were sold was a land road tax, so called, levied by the county commissioners upon said lands at the rate of four dollars upon each quarter section, without regard to valuation or assessment; that in the one case, one John Warden was the owner and occupant of said tract of land at the time of the sale and the several levies and other proceedings therein involved, and to whom the said lands were, for each of the years involved, assessed, and that he, the said John Warden, had at all times and was the owner of sufficient personal property upon said land out of which the said taxes could have been collected by the seizure and sale thereof by the then treasurer of said county; that the county treasurer of said county did not give the notice of

the public sale of said lands as required by law; that the said treasurer did not make a return to the clerk of said county on or before the first Monday following the sale of real property in said county for non-payment of taxes for the years 1876 and 1877, did not deposit with the county clerk a copy of the notice of sale, etc., with a certificate showing that said property was not sold for want of bidders; that the assessors for the said years did not take and subscribe the oath required by law, and did not make a return of such assessment to the county clerk with the oath attached thereto; that on the 27th day of October, 1879, the said John Warden commenced an action in the said court against said plaintiff and Nathan L. Simpson, county treasurer of said county, for the purpose of having the said court by decree declare said taxes illegal and void because of the errors and omissions of the said officers aforesaid, and restrain the issuing of a tax deed on said pretended sale, and to cancel and set aside said sale; that such proceedings were had in the said action, that at the December term, 1879, of said court a decree was therein entered declaring the said sale void for the reasons aforesaid, and canceling said sale and tax certificates and taxes, and the title of the said John Warden in and to the said lands quieted; that in the other case, one John Dunbar was, and for and during all the time involved, had been the owner and occupant of said land; that at all times the said John Dunbar had and owned on said land sufficient personal property out of which the said taxes could have been made by distraint and sale in the manner required by law; nor did the treasurer offer said land at public sale, and make return that said land had been offered for sale and not sold for want of bidders; that said treasurer did not return said land to the county clerk's office after the pretended sale to plaintiff; that the said land was not advertised for sale in the manner required by law, nor was any proof thereof filed in the county clerk's office that said land was not sold

to the person who would pay said taxes for the least quantity; said land was not sold for all the taxes due, delinquent, and unpaid at the time of the sale; there was no oath attached to the assessment rolls by the assessors of the precincts wherein said property is situated for said years; that the said assessors did not take and subscribe the oath required by law; the county commissioners of said county, on the 3d day of July, 1876, pretended to levy a land road tax of four dollars on each 160 acres of said land; that on the 27th day of August, 1879, the said John Durfbar commenced an action in the said court, wherein said Dunbar was plaintiff and this plaintiff and said Simpson, as treasurer of said county of Otoe, were defendants—the object of said suit was to obtain a decree of said court, canceling and setting aside said sale, and declaring the same illegal and void, and quieting the title to said land in the said John Dunbar, etc., and to obtain an injunction restraining the said Simpson, as such treasurer, from issuing a deed to the plaintiff on the said sale; that upon a proper application, the said last mentioned suit was removed to the circuit court of the United States for the proper district; that such proceedings were had in said last mentioned court; that on the 7th day of May, 1881, a decree was rendered in said cause, setting aside said sale of said land for said taxes, and declaring the same illegal and void; setting aside said certificates, and declaring them illegal, except that the court retained said cause for an accounting of the amount due the plaintiff, Selden N. Merriam, for legal taxes and interest at 12 per cent per annum, and awarded said Merriam a claim and lien therefor on said land to the extent and amount of $1,223.13, and thereupon said court by its decree set aside the said taxes, tax sales, and tax certificates, and ordered the said John Dunbar to pay into court the said sum of money for the use of plaintiff, and in default of such payment, ordered the said lands to be sold to pay the said sum with interest, and also declared the said sale

to have been made contrary to the provisions of the revenue laws. Plaintiff further alleged, that because of the levy of the land road tax aforesaid, because of the failure of the assessors to attach the proper oaths to their assessment rolls in the precincts where the lands are situated, because of the failure of the treasurer of said county to give the proper notice of the sale of lands for taxes of the year 1870, because of the failure of the treasurer to make the proper return that the said lands had been offered at public sale and not sold for the want of bidders, and because there was no attempt made by the county treasurer to collect said taxes out of the personal property of the said John Dunbar, the said sale was illegal, and was made by the wrongful acts of the revenue officers above mentioned; that by reason of the facts above set forth, said land was wrongfully sold to plaintiff, and that had said land been rightfully sold to plaintiff, he would have been entitled on the 7th day of May, 1881, the date on which said decree was rendered in said circuit court, to the full sum of $1,-907.26, exclusive of what was due him for the sum of. $264.95 paid for taxes of 1870; and plaintiff alleges, that because the said land had been sold as aforesaid, and because of the wrongful acts aforesaid, he received only the said sum of $1,223.13, losing thereby the said sum of $679.13, and also the amount of money which he paid for the taxes of 1870; that said tax of 1870 had been paid by the said John Dunbar long prior to the date of the sale to the plaintiff, and that the treasurer omitted to so mark the same on the tax list, and that by reason thereof, the same was again collected of plaintiff, amounting to the sum of $264.95; and had it not been that said tax had been so paid, plaintiff would, on the 7th day of May, 1881, have been entitled to the further sum of $617.11, when in fact he received nothing therefor; that because the said tax of 1870 had previously been paid by said John Dunbar, and because of the wrongful act of the treasurer in collecting

them again of plaintiff, plaintiff lost the said sum of
$617.11; that had said land been rightfully sold for said
taxes, and had it not been for the facts above stated, plain-
tiff would have been entitled, on the 7th day of May, 1881,
to $1,296 more money than he actually received; that he
still owns and holds said certificates and tax receipts, and
that by reason of the facts aforesaid, the defendant has be-
come indebted to the plaintiff in the said sum of $1,296.24,
which he demands with interest as therein specified.  The
defendant demurred generally to both causes of action,
which demurrer was sustained by the court.  The plaintiff
standing by his petition, the court rendered final judgment
against him; and he brings the cause to this court on
error.

The section of the statute under which this action was
brought is as follows:

"Sec. 71. · When by mistake or wrongful act of the
treasurer or other officer, land has been sold contrary to
the provisions of this act, the county is to save the pur-
chaser harmless by paying him the amount of principal
and interest to which he would have been entitled had the
land been rightfully sold; and the treasurer or other offi-
cer and their sureties shall be liable for the amount on
their bonds to the county, or the purchaser may recover
the amount directly from the treasurer or other officer
making such mistake or error."  Gen. Stat., 924.

Parties dealing with a county, or other municipal cor-
poration, are under a peculiar obligation to act with fair-
ness and in good faith, as such corporation can only act
through its records and other instrumentalities given it
by law.  Such persons are bound to take notice of such
records, not only of what they show, but also, if such be
the case, of their failure to show, matters material to the
business in hand.  It was then the duty of the plaintiff,
before buying the lands in question at private tax sale, to
examine the record and see for what taxes they were being

sold.   If he neglected this duty, or knowingly co-operated with the county treasurer in a sale and purchase of the land for a tax unauthorized by law, he cannot call upon the county to save him harmless from the effect of such imprudence.   So, also, in regard to the notice of sale, had the plaintiff been buying at public sale it would have been his duty, as the law then stood, to have seen to it that the notice of the time and place of such sale had been properly published, and the proof of such publication filed in the county clerk's office; and, as he was buying at private sale, the power to make which depended upon that of its having been previously offered at public sale in the manner provided by law, and not sold for the want of bidders, it was his duty to see that the record not only contained proof of publication of a proper notice of public sale, but also that the land had been offered at such public sale and not sold for want of bidders.   But if the purchaser, the most active and interested participant in the purchase and sale, chose to neglect these duties, the county, which was scarcely present at all, cannot be held to insure him from the loss which always does and probably is generally intended to follow an investment made with such apparent imprudence.

In regard to the failure of the assesssor to take, subscribe and attach to the assessment roll the oath prescribed by section 12 of the old revenue law, it is only necessary to say that if such failure can be held to be such a "mistake or wrongful act of the treasurer or other officer" as would deprive the purchaser at tax sale of any right "to which he would have been entitled had the land been rightfully sold," then, as the presence or absence of such oath is a matter of record, the purchaser must act upon it at his peril.   As to any objection that might exist to the manner of making said sale—that the lands were not offered to the person who would pay the taxes for the smallest portion of each subdivision, or that the lands were not sold for all the taxes then due on them—such objection

can not be urged by a party to such sale.   As to the taxes
of 1870 paid by the said purchaser, and which it turns out
had been previously paid by the said John Dunbar, it is
only necessary to refer to the opinion of this court in the
case of *Otoe Co. v. Gray*, 10 Neb., 565.   Judge LAKE, in
the opinion, says:  "According to the petition, the claim
of the purchaser does not rest upon the fact of the sale
having been defeated by reason of some irregularity, or
omission by some officer of the revenue of any formality
essential to its validity, but substantially on the fact that,
for want of jurisdiction in the treasurer over the land, the
pretended sale was absolutely void.   As to the jurisdiction
of the treasurer in this matter, there can be no doubt, we
think, that it ceased immediately upon the payment of the
tax, and that thenceforward, in all that he did, he was a
mere wrongdoer to whom the statute was no protection,
and for whose acts the county is in no wise answerable
under the section above quoted."

But there is one remaining "mistake or wrongful act of
the treasurer," by which it is alleged that the said lands
were "sold contrary to the provisions of the revenue law:"·
that is, that the owners, to whom they were severally as-
sessed, were in the occupancy thereof at and before the
time of such sale, and had thereon sufficient personal prop-
erty out of which said taxes could have been made by the
said treasurer by the seizure and sale thereof, but that the
said lands were sold for said taxes without any attempt to
make the same out of such personal property.   This court
has repeatedly held that a sale of land for taxes under cir-
cumstances such as these was void, and, as the law under-
went an important amendment in 1877, it is improbable
that the principle of such. decisions will be reconsidered,
whatever might now be the views of the court as to its
correctness as an original proposition.   Unlike those which
we have been considering, the "wrongful act of the treas-
urer" in selling the land for taxes without first making an

effort to collect them by the seizure and sale of personal property, as well as the existence of such personal property out of which the same could have been collected, was not matter of record, of which the purchaser was bound to take notice, or of which he could be said to be estopped to assert, by participating in the purchase and sale. I know of no reason, nor has any been suggested, why on this point the plaintiff's allegations in both causes of action are not within the terms of the statute binding the county to hold him harmless, etc.

It is assumed in the brief of plaintiff in error that the demurrer was sustained on the ground that the claim of the plaintiff was barred by the statute of limitations, and that to reach that conclusion the court held that the plaintiff's cause of action accrued immediately upon his purchase of the land. If that was the ground of the decision, it cannot be sustained. In the case of *Peet v. O'Brien*, 5 Neb., 360, this court held that, "the title acquired by a purchaser at a tax sale might be said to fail when it should be pronounced invalid by the judgment or decree of a court of competent jurisdiction over the subject matter." Until plaintiff's title failed he had no right to call on Otoe county to hold him harmless, etc., and it was then that the statute commenced to run.

The judgment of the district court is reversed, the demurrer overruled, and the cause remanded to the district court for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.