A. SPEIDEL, APPELLEE, v. SCOTTS BLUFF COUNTY, APPELLANT.

FILED OCTOBER 20, 1933. No. 28590.

*Rush C. Clarke* and *Robert W. Patterson,* for appellant.

*Olsen & Olsen, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

PAINE, J.

A claim was filed with the board of county commissioners, asking a refund of money paid by the purchaser of a tax sale certificate, which he claimed was invalid. His claim being rejected by the county commissioners, an appeal was taken, and the district court reversed the order of the county commissioners, and allowed the claim in the full amount claimed. The county brings the case here on appeal.

On November 23, 1925, appellee bought a tax sale cer-

tificate, No. 4451, at public tax sale, of the county treasurer of Scotts Bluff county, upon the northwest quarter of section 2, township 22 north, range 55 west, for taxes for the years 1923 and 1924. The county treasurer, in issuing such tax sale certificate, inserted in the blank, under the column headed "Acres," the figures 119.21. The purchaser paid the sum of $1,031.59 therefor, and thereafter paid, as subsequent taxes thereto, the delinquent taxes for 1925, in the sum of $432.27.

On November 19, 1930, the purchaser filed his petition in the district court to foreclose said tax certificate, the defendants named therein being the administratrix and the heirs of John Fink, deceased. In their answer, filed February 11, 1931, they admitted the ownership of 92.59 acres of the northwest quarter, but alleged that the remainder, to wit, the south 27.26 acres, belonged to other parties not defendants in the suit, and that the answering defendants were ready, willing and able to redeem the 92.59 acres belonging to them. On March 24, 1931, the district judge entered a decree in said tax foreclosure case, finding for the defendants in so far as the 92.59 acres of said quarter were concerned, and that their proportionate share of said taxes upon that portion of the northwest quarter was $1,867.65, and finding that the remaining 27.26 acres, set out in said tax certificate as belonging to the northwest quarter of said section, was not owned by the defendants, but belongs to persons not made parties defendant in the foreclosure action. The defendants immediately redeemed their 92.59 acres by the payment of $1,867.65 to the county treasurer, being $1,149.62, principal, and $718.03, interest. On June 3, 1932, the district judge entered a decree that A. Speidel, the purchaser of the tax sale certificate, should recover from the county the sum of $314.24, principal, with interest thereon at 12 per cent. from November 23, 1925, and costs of suit.

It will be noted that on the tax sale certificate the county treasurer entered the amount of land in the north-

west quarter to be 119.21 acres, and that all through the records of this case it is stated that the defendants owned 92.59 acres, and that there is a balance left, owned by parties not made defendants, in the amount of 27.26 acres, which add to 119.85 acres, showing that through-out the foreclosure proceedings on the tax sale certificate, by an error of some one, the two amounts made a surplus of .64 of an acre, which will not be discussed further.

The difficulty in this case arises from the fact that, upon the date of the redemption by the Fink heirs, there were only 92.59 acres of land in the northwest quarter, and that the tax sale certificate sold the purchaser, by mistake of various county officials in the levy and assessment of the land, indicated that there were 119.21 acres, which was not true, and, therefore, it is contended by the purchaser that the county should refund to him the amount he has lost, as authorized under section 77-2030, Comp. St. 1929. On the other hand, the county maintains that the tax sale certificate holder is not entitled to a refund until said sale is adjudged to be void by a court of competent jurisdiction (section 77-2054, Comp. St. 1929) and that said tax certificate, in the action to foreclose, was not adjudged invalid, and that after five years from the date of the sale of such tax certificate it ceases to be of any force or effect. Comp. St. 1929, sec. 77-2049; *Battelle v. Douglas County*, 65 Neb. 329.

The appellee says that the mistake of the county officers as to the number of acres in the northwest quarter of section 2, involved herein, can best be explained by reference to the case of *Littlejohn v. Fink*, 109 Neb. 282, in which a plat of this particular section of land will be found on page 284. In the reply brief of the appellant, it is insisted that this reference to proceedings in another lawsuit, bearing upon the exact size of the northwest quarter of section 2, is improper for the reason that it is the first appearance of such facts in the case at bar, for the bill of exceptions discloses no refer-

ence thereto. None of these facts were either pleaded or proved in the lower court, and it has been held that proceedings in collateral actions can only be proved by a certified copy of the record of proceedings had in the case in the appellate court. *Morrison v. Boggs,* 44 Neb. 248; *Burge v. Gandy,* 41 Neb. 149; 15 R. C. L. 1113, sec. 44.

When a case is brought before the court for trial, the respective parties must establish the facts involved in the case, the court being presumed to be uninformed in reference thereto. In the trial of one case, the court can no more take judicial notice of the record in another case in the same court without its formal introduction in evidence than if it were a record in another court; and much less can the supreme court on appeal take notice of the existence of a record not introduced in evidence in the court below. *People v. De la Guerra,* 24 Cal. 73. See notes to *Lanfear v. Mestier,* 89 Am. Dec. 658 (18 La. Ann. 497).

It is not proper for this court to take judicial notice of the pleadings, evidence, and judgment in another case, even though it involves the same land in controversy in this case, when the first reference thereto appears in the briefs filed in this court.

"The reviewing court should not by judicial notice introduce into the record facts of which the lower court had no knowledge. Any other rule would be manifestly unfair to the trial court and to the parties, who are entitled to a full and impartial hearing in the court of original jurisdiction." *Fassler v. Streit,* 92 Neb. 786.

■ It has been held that the rule of *caveat emptor* applies with full force to a purchaser at a tax sale. *Pennock v. Douglas County,* 39 Neb. 293; *Norris v. Burt County,* 56 Neb. 295.

The liability of a county to refund money paid by the purchaser of a tax sale certificate, where his title has failed, is entirely statutory, and does not rest upon legal principles recognized by the common law. *Martin v.*

*Kearney County,* 62 Neb. 538. It is claimed that this certificate failed, and the tax sale purchaser is entitled to a refund under sections 77-2030 and 77-2054, Comp. St. 1929.

The purchaser of real estate at delinquent tax sale is a volunteer, and subject ordinarily to the rules applicable to voluntary payments of taxes. When such purchaser relies upon a statute for the recovery of taxes paid, alleged by him to be illegal, he must be careful to bring himself within the provisions of the statute. *McCague v. City of Omaha,* 58 Neb. 37; *Dixon County v. Beardshear,* 38 Neb. 389.

To bring any action within these requirements of our statute, it must appear that the sale in question failed through mistake or wrongful act of a county officer, and the one seeking to recover must point out the particular act done or omitted, and the officer responsible for the same. *Kaeiser v. Nuckolls County,* 14 Neb. 277.

It is clear that, if the lands sold for taxes by a county treasurer were not subject to taxation, the county would be liable. *Fuller v. County of Colfax,* 33 Neb. 716.

It has been held that if the mistakes or wrongful acts of the treasurer or other officer are not matters of record, nor are participated in by the tax purchaser, the county is to save the purchaser harmless, but a tax purchaser is bound to take notice of county records, not only as to what they show, but also, if such be the case, of their failure to show matters material to the business in hand, for tax purchasers are under a peculiar obligation to act with fairness and in good faith, and must recognize that a county can act only through its records and other instrumentalities given it by law. *Merriam v. Otoe County,* 15 Neb. 408; *Roberts v. Adams County,* 18 Neb. 471; 3 Cooley, Taxation (4th ed.) 2583.

It has been held that when a taxpayer voluntarily pays a questionable tax without objection, there can be no recovery, because the party waives the objection by deliberately paying the amount claimed. *Wilson v. Butler County,* 26 Neb. 676.

In our opinion, the statute does not include, as one of the grounds for a refund, that the land has been assessed too high, or on the theory that it contained more acres than it may actually contain. Such an error of the county officers does not constitute a violation of official duty, or actionable wrong-doing on the part of the public officer, for the county is in no sense a warrantor or guarantor of the title, but the doctrine of *caveat emptor* prevails at all times in the purchase of tax sale certificates.

If a tax has been levied that is absolutely void, and has been paid, though voluntarily, the amount thereof may be recovered in an action for that purpose, but taxes not entirely void, though the assessment on which they are based was irregularly made, may not be recovered when voluntarily paid. *Haarmann Vinegar & Pickle Co v. Douglas County*, 122 Neb. 643.

If, as a matter of fact, the taxing authorities have assessed the plaintiff's property, which is liable to taxation, at too high a valuation, it would seem that the remedy by suit to recover a tax paid under protest would not be applicable, for, so long as the property assessed is liable to taxation, plaintiff's remedy is to go before the board of equalization, where that portion constituting the overvaluation, however it may occur, may be abated. *Janike v. Butler County*, 103 Neb. 865.

In order to hold a county liable for a refund to a tax certificate purchaser, it must appear that the land has been sold for taxes when no tax was due at the time, or sold in consequence of an error in describing the land (section 77-2030, Comp. St. 1929), or it must have been determined by a court of competent jurisdiction that said sale was void (section 77-2054, Comp. St. 1929).

■ This court has held that the title acquired by a purchaser at a tax sale might be said to fail when it should be pronounced invalid by the judgment or decree of a court of competent jurisdiction. *Peet v. O'Brien*, 5 Neb. 360. But, in the case at bar, it is shown by the

pleadings and evidence that, upon the foreclosure of the tax certificate in question, the burden of proof of the regularity of all proceedings leading up to the issuance of the tax certificate was upon the purchaser thereof. *Moffitt v. Reed,* 124 Neb. 410. After the trial the district court found that the certificate in the case at bar was valid, and that the northwest quarter of said section 2 contained 119.85 acres, as sold by the county treasurer. Such judgment is unreversed and unmodified, and has become final and conclusive. The only other action taken by the holder of the tax certificate was the filing of a claim for a refund from the county, which was rejected. From this an appeal was taken to the district court, where the claim was held good, and the case at bar is an appeal therefrom. In our opinion, the tax certificate having been held valid by a court of competent jurisdiction, the tax purchaser is not entitled to a refund from the county thereon.

REVERSED.